IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

IN ADMIRALTY

CASE NO. 4:21-cv-10018

IN THE MATTER OF:

THE COMPLAINT OF KEY WEST JETSKI,
INC. AS OWNER OF THE YAMAHA PERSONAL
WATERCRAFT (HULL ID# YAMA2116I920)
ITS ENGINES, TACKLE, APPURTENANCES,
EQUIPMENT, ETC. IN A CAUSE FOR EXONERATION
FROM OR LIMITATION OF LIABILITY,

    Petitioners.
_____/

## COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIAIBLITY

WHEREAS KEY WEST JETSKI, INC. (the "Petitioner"), as the owner of the Yamaha Pleasure Watercraft bearing Hull ID# YAMA2116I920 (the "Vessel"), by and through their undersigned counsel, file this Petition for Exoneration from or Limitation of Liability pursuant to Chapter 30501 *et. seq.* of Title 46, United States Code, and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims.

### JURISDICTION, PARTIES AND VENUE

1.    This is a claim within the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §§1331 and 1333, the Limitation of Liability Act, 46 USC §§ 30501 *et seq.*, and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims.

2.    Petitioner specifically invokes Rule 9(h) or the Federal Rules of Civil Procedure.

1

3. At all times material hereto, the Yamaha Pleasure Watercraft bearing Hull ID# YAMA2116I920 (the "Vessel"), was owned by the Petitioner, KEY WEST JETSKI, INC., a Florida corportion with its principal place of business located at 5001 5th Ave, Key West, Florida 33040 ("Owners").

3. At all times material hereto, the Vessel was registered in Key West, Monroe County, Florida.

4. At all times material hereto, the Vessel was rented to and operated by Wanisha Wright and/or her wife Melinda A. Smith ("Operators") pursuant to a bareboat charter agreement.

5. The incident giving rise to this matter occurred on June 28, 2020, occurred during the course of a one hour jet ski rental tour in the navigable waters in or around Key West, Florida.

6. Under the circumstances of this case, there was no freight pending within the meaning of the applicable statutes at the start of the voyage at issue or any time up to including the time of the incident that is the subject of this lawsuit.

7. This Complaint is filed within six (6) months of the Owners receipt of its first written notice of claim within the meaning of 46 U.S.C. Sec. 30511 (a) giving rise to this limitation action.

**OPERATIVE FACTS REGARDING THE INCIDENT**

7. The incident that is the subject of this lawsuit involved the Yamaha Personal Watercraft bearing Hull ID# YAMA2116I920 (the "Vessel").

8. At all times material hereto, the Vessel was rented to and operated by Wanisha Wright and her wife Melinda A. Smith ("Operators") pursuant to a bareboat charter agreement.

2

9. The incident allegedly occurred when Wright and Smith tipped the Vessel and fell into the water approximately 30 minutes into a one hour jet ski tour of the navigable waterways around Key West, Florida on June 28, 2020.

10. Wanisha Wright is believed to have broken a fingernail and/or injured her finger during this incident.

11. Prior to the commencement of their Vessel rental and the incident that is the subject of this lawsuit, Wanisha Wright and her wife Melinda A. Smith, rented the Vessel from KEY WET JETSKI, INC. pursuant to the Bare Boat Lease Rental Contract (attached hereto as **Exhibit "1"**) for the purposes of participating in the aforementioned jet ski tour in the navigable waters around Key West, Florida.

12. The Terms of the aforementioned Bare Boat Lease Rental Contract (**Exhibit "1"**) executed and agreed by Wanisha Wright are as follows:

> "***This is a high risk activity and can result in injury or death. This is a release of liability, Hold Harmless agreement, this Indemnifies and releases the lessor of any negligence.***
>
> ***WARNING:*** *The charters of this equipment do not hold the Lessor responsible in any way whatsoever for any accident or incident resulting in injury or death from the use of this vessel or watersports equipment. This equipment is used at the renters / lessee's own risk.*"
>
> "***ACKNOWLEDGMENT OF DANGER this is a High Risk activity and can result in injury or Death:*** *The undersigned hereby acknowledges and agrees that boats are recreational vessels and must be used with caution and care, as the water is used as a waterway for other commercial and recreational craft. The undersigned is warned to pay strict attention to instructions provided to them by the Lessor and to operate this vessel in a safe manner. Furthermore, it is recognized by both parties that in operating or riding said vessel or boat by the undersigned,* **that undersigned assumes all risk which may result in injury or death.**"
>
> "***RELEASE****: The undersigned hereby releases, Indemnifies and Hold Harmless Key West Jetski, Inc., and Parrott Key Resort, HHLP, KEY WEST ONE LLC, and their agents, principals, officers, employees, their heirs and successors from any and all claims, demands, damages, action, causes of action or suit of any kind or nature whatsoever, including lessor negligence or for failure to communicate all Federal and state laws governing the lease or rental of Personal Watercraft including all aspects of Rules of the Road, Navigation or*

*operation of rented vessel or waverunner. Including going under bridges, channel markers, all environmental conditions, currents, tides, wind, rain, fog or any other vessels you may encounter. You are releasing the lessor of any negligence. The undersigned also releases the lessor from everything including slip and fall on the dock, and particularly on account of any injury including death sustained in the operation of use of the noted rental vessel. The undersigned agrees to pay all costs of any action necessary.*

**LIABILITY:** *The undersigned agrees to be solely responsible for any and all damage or injuries done to or by any third party and agrees to indemnify and hold harmless and release the lessor even from its own negligence, Key West Jetski, lnc., and Parrott Key Resort, HHLP, KEY WEST ONE LLC, their agents, principals, officers, employees, their heirs and assigns from any and all claims including a third party, but not limited to the costs of any necessary legal actions and attorney fees. Lessee agrees to Indemnify, hold harmless and release Lessor and their agents for any and damages or injuries which he or she may sustain even by a third party incident or from lessor negligence, from the operation or use of the rental vessel leased here under or caused by Lessee to others.*

*Leasee agrees to indemnify and save Lessor harmless against any and all claims and liability of whatsoever kind or nature not otherwise covered herein, including negligence. Lessee agrees to pay all costs and expenses including attorney's fees incurred in connection there with relating to or arising from the possession, use, maintenance, condition or operation of the rental vessel."*

13. Prior to the commencement of their Vessel rental and the incident that is the subject of this lawsuit, Wanisha Wright and Melinda A. Smith, each completed and initialled each item on the two page PWC Renter Orientation Checklist (attached hereto as **Exhibit "2"**) that cautions and instructs renters to "***Know Operational Controls***", "***Take Early Action to Avoid Collisions***", "***Scan Constantly***", "***Operate Defensively***", "***Avoid Aggressive Maneuvers***", "***Know How to Right the PWC in Open Water***", "***Follow Rental Agency Rules and Boating Laws***" and "***Know the Waters****: Know the area in which you will be operating and observe all navigational markers and signs.*"

14. Prior to the commencement of their Vessel rental and the incident that is the subject of this lawsuit, Wanisha Wright and Melinda A. Smith, each executed a Release of Liability, Assumption of Risk, Waiver of Claims, Indemnification & Binding Arbitration Agreement (attached hereto as **Composite Exhibit "3"**).

4

15. The Terms of the aforementioned Release of Liability, Assumption of Risk, Waiver of Claims, Indemnification & Binding Arbitration Agreement (**Exhibit "3"**) executed and agreed by Wanisha Wright are as follows:

> "***Notice*** *- By signing this document you may be waiving certain legal rights, including the right to sue.*
>
> ***Release and Waiver of Claims: Assumption of the Risk; Indemnification Agreement***
>
> *ln consideration of being allowed to use the facilities. vessels, and participate in operating personal watercraft and other activities (collectively the 'Activities') provided by Key West Jet Ski lnc. (the 'Host'), the Participant hereby agrees. to the fullest extent permitted by law, as follows:*
>
> *1)* ***TO WAIVE ALL CLAIMS*** *that he/she has or may have against the Host arising out of the Participant's participation in the Activities or the use of any equipment provided by the Host ("Equipment") including while receiving instruction and/or training. As used herein. the term "Equipment" shall include, but not be limited to, personal watercraft;*
>
> *2)* ***TO ASSUME ALL RISKS*** *of participating in the Activities and using the Equipment, even those caused by the negligent acts or conduct of the Host. its owners, affiliates, operators, employees, agents, and/or officers. The Participant*
> *understands that there are inherent risks of participating in the Activities and using the Equipment, which may be both foreseen and unforeseen and include serious physical injury and death;*
>
> *3)* ***TO RELEASE*** *the Host, its owners, affiliates, operators, employees, agents, and officers from all liability for any loss, damage, injury. death, or expense that the Participant (or his/her next of kin) may suffer. arising out of his/her participation in the Activities and/or use of the Equipment. including while receiving instruction and/or training. The Participant specifically understands that he/she is releasing any and all claims that arise or may arise from any* ***negligent*** *acts or conduct of the Host, its owners, affiliates, operators, employees, agents, and/or officers, to the fullest extent permitted by law. However, nothing in this Agreement shall be construed as a release for conduct that is found to constitute gross negligence or intentional conduct; and*
>
> *4)* ***TO INDEMNIFY*** *the Host, its owners. Affiliates, operators, employees, agents, and/or officers from all liability for any loss. damage, injury, death, or expense that the Participant (or his/her next of kin) may suffer, arising out of participation in the Activities and/or use of the Equipment, including while receiving instruction and/or training.*"

5

16. Prior to the commencement of their Vessel rental and the incident that is the subject of this lawsuit, Wanisha Wright and Melinda A. Smith, each completed and initialled each item on a second PWC Renter Orientation Checklist (attached hereto as **Composite Exhibit "4"**), confirming that they were "*instructed on and underst*(ood) *the rules and information provided in* (that) *orientation*" prior to commencing their Vessel rental.

17. As a routine custom and practice, Petitioner required all jet ski tour participants to complete the aforementioned PWC Orientation Checklists prior to the commencement of their rentals and to attend a further 15-20 minute oral safety briefing by one of the Petitioner's tour guide thoroughly covering each and every one of the safety items on the PWC Orientation Checklists.

18. Prior to the commencement of their Vessel rental and the incident that is the subject of this lawsuit, Wanisha Wright and Melinda Smith were then given this further 15-20 minute oral safety briefing thoroughly detailing the PWC controls and the safe operation of the Vessel by one of Petitioner's two tour guides assigned to the jet ski tour.

19. At the start of the jet ski tour, Petitioner's tour guides observed Wright and Smith successfully operate the Vessel in accordance with their instructions.

20. After commencing their Vessel rental and the jet ski tour around Key West, Wright and Smith continued to successfully operate the Vessel for approximately 30 minutes before the incident occurred.

21. During a scheduled stop approximately halfway through the jet ski tour, Wright and Smith suddenly tipped the then stationary Vessel they were operating and fell into the water.

22. Within seconds, Wright and Smith had promptly re-boarded the Vessel without assistance or further incident. There was no damage to the Vessel.

23. One of the Petitioner's two tour guides immediately approached Wright and Smith to ensure they were okay and ask if they needed any assistance. It was during this interaction that Petitioner's tour guide noticed Wright had one of her fingers in her mouth.

24. Petitioner's tour guide asked Wright if she had broken one of her extremely long artificial fingernails. Wright nodded her head affirmatively, but refused to take her finger out of her mouth.

25. Petitioner's tour guide asked Wright several times if she wanted medical assistance, if she wanted to return to the dock and if he could see her fingernail to determine the extent of the injury. Wright repeatedly declined and refused to remove her finger from her mouth.

26. Instead, both Wright and Smith repeatedly assured Petitioner's tour guide that she did not require medical assistance and both indicated that they wanted to continue with the jet ski tour.

27. Once the tour had resumed, Wright and Smith continued operating the Vessel for another 5-6 miles without incident and only signalling the Petitioner's tour guide for assistance minutes before the final stop of the tour.

28. When Petitioner's tour guide approached them again in response, Wright still had her finger in her mouth and continued to refuse to show the Petitioner's tour guide the alleged injury to her fingernail and/or finger.

29. Petitioner's tour guide again asked Wright if they could get her medical assistance and advised that he would call ahead for medical assistance to be waiting at the dock. Wright declined.

30. Both Wright and Smith advised that they did not want medical assistance but that they simply wanted to return to the dock immediately.

7

31. Petitioner's tour guide called for a back-up guide and, together, they took Wright and Smith back to the dock.

32. After arriving back at the dock, Smith and Wright left the scene and, upon information and belief, Smith took Wright to Lower Keys Medical Center.

33. According to records produced by the Florida Fish and Wildlife Commission (attached hereto as **Exhibit "5"**), the Petitioner reported the incident at 6:53 p.m.

34. At 8:05 p.m. that same evening, Florida Fish and Wildlife Officer Shepherd met with Wanesha Wright at the campground she was staying at after being discharged from Lower Keys Medical Center.

35. FWC Officer Shephard indicated in his Incident Listing "*NO INJURY BEYOND FIRST AID. TWO SELF REPORTS BEING ISSUED TO BOTH PARTIES*" and closed the file at 9:40 p.m. the same evening.

36. Wanisha Wright subsequently submitted the attached Florida Boating Accident Self Report (attached hereto as **Composite Exhibit "6"**), in which she estimated her damages at USD $200.

37. At all times material hereto, the Vessel was seaworthy properly and efficiently manned, supplied, equipped, and furnished; and well and sufficiently fitted and supplied with suitable machinery, tackle, apparel and appliances, all in good order and condition and suitable for the use for which it was engaged.

38. The incident of June 28, 2020 as aforseaid, and the resulting injuries, losses and damages, were neither caused, nor were contributed to, by any fault, neglect, or want of care on the part of the Petitioner, nor anyone for whose acts Petitioner are, or may be responsible, but on the contrary, were caused solely by conditions beyond Petitioners' control and actual or constructive knowledge.

39. Petitioner denies any privity with or knowledge of any particular wrongful act

8

or omission, fault, want of due care or breach of any duty that could be considered a legal cause of the incident.

40. The following persons, as of this date, have asserted claims against the Petitioner as a result of the incident of June 28, 2020:

(a) Justin Shapiro, Esq.
Leesfield Scolaro
2350 South Dixie Highway
Miami, Florida 33133
Phone: (305) 854-4900
Email: Info@Leesfield.com

(b) Wanisha Wright, Operator

(c) Melinda Smith, Operator

41. Petitioner desires to contest their liability for any such claims and, therefore, shows they are entitled to a decree exonerating them and the vessel from liability. Should this Honorable Court, however, adjudge that Petitioner is liable to any extent in the premises, then Petitioner claims the benefit of limitation of liability as provided in 46 U.S.C.A. Section 30501 et seq., and all statutes amendatory thereof and supplementary thereto.

42. Petitioner alleges that the amount of the damages and/or claim hereinabove described potentially exceed the amount or value of Petitioners' interest in the Vessel together with any freight pending. Petitioner hereby offers and files its Certificate of No Freight Pending attached hereto as **Exhibit "7"**.

43. Petitioner asserts that the value of the Vessel was less than $6,000.00 following the termination of the June 28, 2020 incident which gives rise to this limitation action.

44. Petitioner hereby offers and files an affidavit of value by Donald Kirkpatrick on behalf of the Petitioner, KEY WEST JETSKI, INC., the owner of the Vessel after the incident,

attesting that the value of the Vessel is less than $6,000.00 (attached hereto as **Exhibit "8"**).

45. Petitioner offers and will file an Ad Interim Stipulation with approved surety for the payment into this Honorable Court of the aggregate amount of Petitioner's interest in the Vessel at the termination of the voyage aforesaid, with interest at the rate of six (6%) percent per annum from the date of the Stipulation, and for all costs; and in addition thereto, Petitioner is preparing to give bond or stipulation for any amount in excess of the Ad Interim Stipulation as may be ascertained and determined to be necessary under any orders of this Honorable Court, as provided by the laws of the United States and the Federal Rules of Civil Procedure.

**WHEREFORE**, Petitioner requests:

(a) In accordance with the provisions set forth in Supplemental Rule (F)(4) and Local Admiralty Rule 7.01(g), that this Honorable Court enter an Order directing issuance of a notice to all persons, firms and corporations claiming damage for any and all losses, damages, destructions, deaths or injuries, resulting from the incident of June 28, 2020, admonishing each of them to file their claim with the Clerk of this Court and serve copies of said claims on the attorney for Petitioner on or before the date fixed by the Court in the notice or be forever barred or permanently enjoin from making or filing any such claims, to make due proof of their respective claims before this Court, and to appear and answer the allegations of this Complaint according to the law and rules and practices of this Court on or before a certain time to be fixed by the notice;

(b) that this Honorable Court enter an Order approving the Ad Interim Stipulation filed by Petitioner;

(c) that this Honorable Court restrain, stay and enjoin the further prosecution of any and all actions, suits, or proceedings already commenced and the commencement or prosecution thereafter of any and all actions, suits or proceedings of any nature or description whatsoever in any jurisdiction against Petitioner, as aforesaid, or against the Yamaha

    Pleasure Watercraft bearing Hull ID# YAMA2116I920 ("Vessel") or against any property of the Petitioner, except in this action to recover damages for or in respect of any loss, damage, injury, or destruction caused by or resulting from the aforesaid voyage;

(d) that this Honorable Court enter judgment that Petitioner and the vessel are not liable for any losses, damages, deaths, injuries, destruction, or any other claim whatsoever arising out of the incident of June 28, 2020, or out of the voyage described herein and that accordingly Plaintiff be exonerated from any and all liability which has been or may be claimed against them as a result of this voyage and incident; in the alternative if such liability is found to exist, that Petitioners' liability be limited to the amount of the value of the Petitioners' interest in the Vessel and pending freight immediately after the above-mentioned incident of June 28, 2020; and that the money or security paid be divided pro rata among such Claimants as may duly provide their claims before this Court, saving to all parties any priorities they may be legally entitled to; and that judgment and decree be entered discharging Petitioner and the Vessel of and from all further liability and forever enjoining and prohibiting filing and prosecution of any claims against Petitioner or their property in consequence of or in connection with the matters and happening referred to in this Complaint.

(e) that Petitioner be granted such other, further, or different relief as may be proper under the circumstances.

Dated this 3rd day of February, 2021.

                                              Respectfully submitted,

                                By:     */s/ Neil Bayer*
                                        Neil Bayer, Esq.
                                        Fla Bar No.: 615684

                              By:     */s/ Chase Alexandra Jansson*
                                        Chase Alexandra Jansson, Esq.

Fla Bar No.: 1002265

Campbell Johnston Clark, LLP
*Attorneys for the Petitioner*
2600 Douglas Road
Suite 508
Coral Gables, FL  33134
Tel. : 786-204-3784
Email: neil@cjclaw.com
Email: chase@cjclaw.com
Email: cindy@cjclaw.com